UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **KENDRICK GARDNER** | : | **CIVIL ACTION NO. 5:17-cv-660** |
| DOC #59384 | | SECTION P |
| **VERSUS** | : | **JUDGE S. MAURICE HICKS, JR.** |
| **STEVE PRATOR, ET AL** | : | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint filed in *forma pauperis* by plaintiff Kendrick Gardner ("Gardner"). Gardner is an inmate housed at Caddo Correctional Center ("CCC") in Shreveport, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**.

## I.
## Background

Gardner's original complaint was deficient in several aspects. Thus, on July 20, 2017, this court issued a memorandum order directing him to provide information/documentation in support of his claims. Doc. 5. He filed an amended complaint on August 21, 2017. Doc. 6. The court's recitation of the background in this matter is based upon the complaints and documentation provided by Gardner.

Gardner claims that on January 17, 2017, he notified defendant Cpl. Francine Williams ("Williams") that he [Gardner] needed his noon dose of blood pressure medication while Nurse Yolanda Jones ("Jones") was in pod. Doc. 6. p. 2. He states that Williams told him that she

1

would check to see if he was on the medication list but that she did not do so. *Id.* Gardner contends that Jones was standing next to Williams when he told her about the need for his medication. *Id.* Nevertheless, he claims that Jones did not confirm whether or not he was to take the medication. *Id.* Gardner states that when he saw that Jones was leaving the pod, he again inquired with Williams about his medication. *Id.* Gardner contends that Williams instructed him to come to the desk, which he did. *Id.* He claims that he explained to Williams that he had severe hypertension and needed his medicine but that Williams replied that she did not care and ordered Gardner to go to lockdown. *Id.* Gardner then asked to speak to a shift sergeant, at which point Williams allegedly called the Emergency Response Team ("ERT") indicating that she was having an issue with an inmate. *Id.* at 3. Gardner states that he immediately returned to his cell to prevent being tackled and tased. *Id.* The ERT deputies, along with defendant Sgt. Pye ("Pye"), came to his cell to escort him to the nurse's station. *Id.* Gardner claims that while being escorted to the nurse's station, he informed Pye about his need for blood pressure medication. *Id.*

Once at the nurse's station, Gardner states that his file was pulled, and it was confirmed that he was prescribed the medication and should have been on the medication list. *Id.* He claims that his blood pressure was taken and same was extremely high. *Id.* Gardner was assured that he would get the medication as soon as Jones returned with the cart. *Id.* Gardner claims that Pye told him that he would not be placed in lockdown. *Id.* However, he states that approximately five minutes after returning to his cell, the ERT went to his cell and brought him to lockdown for twenty-two hours. *Id.* at 3-4. As a result, Gardner contends that there was a two to three hour delay before he received the medication. *Id.* at 4.

Gardner states that after the twenty-two hours had elapsed, he was served with a disciplinary report written by Williams charging him with disobeying a written or verbal order from staff. *Id.* He claims that a disciplinary hearing was held on January 20, 2017, during which he was found not guilty of the violation. *Id.*

Gardner also contends that the lock-down cell in which he was placed was not sanitary. Specifically, he states that it was cold, filthy from urine, and had toilet paper and water on the floor. *Id.* at 6. He claims that the water came from beneath the toilet and that he had to mop out the cell twice during the evening shift. Doc. 1, pp. 3-4. He states that he was moved to segregation during the midnight shift and completed his hours there. *Id.* at 4.

As a result of the above, Gardner claims that Williams failed to follow various policies and regulations concerning medical care. *Id.* He states that same constitutes cruel and unusual punishment in violation of his Eighth Amendment Rights. *Id.* He further alleges that Williams abused her authority by: (1) refusing to give him the medication; (2) making malicious allegations; (3) using the ERT as "her personal attack dog"; (4) "using subterfuge with higher rank to deviate from what truly happened"; (5) attempting to use a disciplinary board to punish him "for a second time which would be more severe" [*id.* at 5]; and, putting him in lockdown for twenty-two hours, which he claims was excessive punishment [doc. 1, p. 3]. Gardner also claims that Williams' statement that she "didn't care" about his need for blood pressure medication constitutes a denial of medical care. Doc. 6. p. 5. In addition, he alleges violations of his "5th amendment right to protection against arbitrary actions of the Government and the 14th amendment promises equal protection of the law to apply to the State." *Id.*

Gardner claims that he suffered pain from the incident and endured extreme emotional distress and mental anguish while he was locked up. Doc. 1, p. 5. As relief, he seeks "unspecified" compensatory damages and asks that Williams be demoted. *Id.*

## II.
## Law and Analysis

### A. Screening

Gardner has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Doc. 4. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); *Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell,* 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

42 U.S.C. § 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation

has been alleged, there is no cognizable claim under § 1983. In order to hold defendants liable under 42 U.S.C. § 1983, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *West v. Atkin*, 108 S. Ct. 2250, 2254-55 (1988).

**B. Medical Care Claims**

Gardner claims that his medical care was delayed. Such claims are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, an inmate must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 97 S. Ct. 285, 292 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas,* 245 F.3d 447, 458–59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson,* 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997). The

official must have a subjective intent to cause harm. *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). Said another way, deliberate indifference, i.e., a subjective intent to cause harm, cannot be inferred from a prison official's failure to act reasonably. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 (5th Cir. 1996).

Further, the fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir.1997). In *Woodall v. Foti,* 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.

Additionally, the fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Woodall, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992). Furthermore, the fact that a plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992).

In this case, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, Gardner admits that there was only a two to three hour delay in receiving his medication, and, although he did not receive his medication while he was in lock down, he alleges no injury as the result of that delay. As stated in *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993), "to maintain a viable claim for delayed medical

treatment there must have been deliberate indifference, which results in a harm." The facts of this matter clearly do not demonstrate that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly or wantonly disregarded his medical needs, or that he suffered any damage as a result of the alleged delay. Accordingly, his medical treatment claims should be dismissed with prejudice as frivolous.

**C. Conditions of Confinement**

Gardner alleges that there are unsanitary conditions in CCC's lock-down cells. Conditions of confinement claims such as those are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. As such, a plaintiff must establish that the conditions of confinement were sufficiently harmful to evidence deliberate indifference to his needs. "The Constitution 'does not mandate comfortable prisons,' ... but neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "Only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In this context, deliberate indifference is established by showing that the defendant officials were "aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and that they actually drew an inference that such potential for harm existed." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).

In the present case, Gardner does not allege that he was denied anything close to the minimal civilized measure of life's necessities. He was in the cell in question for less than twenty-two hours as he was moved during the midnight shift. Further, he was provided with cleaning items and was able to mop the cell twice. He has not alleged either a deprivation so extreme that it violates the Constitution or sufficiently serious harm resulting from this problem to meet the requirements of *Farmer*. While certainly not an ideal environment, his claims simply do not rise to the level of cruel and usual punishment as defined by the jurisprudence. Gardner states no facts that would satisfy the threshold requirements for an Eighth Amendment violation and his claims should be dismissed.

**D. SHU Placement**

Gardner complains that his placement in lockdown by Williams was excessive punishment. However, this claim fails to implicate a protected liberty interest because his placement does not present an atypical, significant deprivation in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 486, 115 S. Ct. 2293 (1995); *Johnson v. Lewis*, 335 Fed. Appx. 48 (5th Cir. 2009). Solitary confinement is typically viewed as an ordinary, expected, and permissible incident of prison life. *See Pichardo v. Kinker,* 73 F.3d 612 (5th Cir. 1996). But solitary confinement can be used in a way that "imposes atypical and significant hardship." *Hernandez v. Velasquez,* 522 F.3d 556, 562–63 (5th Cir. 2008) (quoting *Sandin,* 115 S. Ct. at 2300). *See also Wilkinson v. Austin,* 125 S. Ct. 2384 (2005) and *Wilkerson v. Goodwin,* 774 F.3d 845, 855–57 (5th Cir. 2014). "Severity of the restrictive conditions and their duration [are] key factors" in determining whether an inmate has a liberty interest in his custodial

classification. *Wilkerson*, 774 F.3d at 854. In regard to duration of confinement, the court in *Bailey v. Fisher*, 647 App'x 472, 472-77 (5th Cir. 2016) stated:

> [T]he Fifth Circuit has recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, W*ilkerson*, 774 F.3d at 855, such that 18–19 months of segregation under even the most isolated of conditions may not implicate a liberty interest. *See also Hernandez,* 522 F.3d at 563 (lockdown in 'a shared cell for twelve months with permission to leave only for showers, medical appointments, and family visits' not an atypical or significant hardship).

Gardner was in lockdown for less than twenty-two hours. Such duration is not sufficiently atypical to trigger a due process interest and his claims should be dismissed.

### E. Policy Violations

Gardner contends that Williams failed to follow various policies and regulations. However, an alleged failure to follow prison rules and regulations does not, in itself, give rise to a constitutional violation. *See Taylor v. Howards*, 268 F.3d 1063 (5th Cir. 2001), citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Gardner's claims in this regard should be dismissed.

### F. Improper Parties

The court notes that Caddo Parish Sheriff's Department and CCC do not have the capacity to be sued. Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether the above entities have the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24. The State of Louisiana has not granted juridical status to CCC or to the Caddo Parish Sheriff's Department.

In Louisiana, neither correctional centers nor sheriff's departments are legal entities capable of suing or being sued as the State of Louisiana has not granted them juridical status. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988); *Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So.2d 236 (La. Ct. App. 1977). Gardner's claims against these non-juridical entities fail to state a claim upon which relief can be granted.

## III.
## Conclusion

For reasons stated,

**IT IS RECOMMENDED** that Gardner's civil rights complaint **be DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 28th day of September, 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE